# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

MICHAEL DAVIS,

        Plaintiff,

v.

BNSF RAILWAY COMPANY,

        Defendant

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Michael Davis ("Mr. Davis) brings this complaint against Defendant BNSF Railway Company ("BNSF"). In support, Mr. Davis states and alleges as follows:

## PARTIES

1. Mr. Davis resides in Mt. Vernon, Washington.

2. At all times material herein, BNSF was and is a Delaware corporation organized and existing as a railroad carrier engaged in interstate commerce. BNSF maintains and operates a Northwest Division office located at 2301 20th Avenue West, Seattle, Washington, 98199.

3. At all times material herein, Mr. Davis was an employee of BNSF.

## JURISDICTION & VENUE

4. This action arises under a federal statute, Title 49 U.S.C. § 20109, and this action is timely commenced within the meaning of that statute. On or about February 17, 2011,

Complaint and Demand for Jury Trial
Page 1

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

Mr. Davis filed a complaint with the Secretary of Labor alleging that BNSF violated 49 U.S.C. § 20109. More than 210 days have passed since Mr. Davis filed that complaint, the Secretary of Labor has not issued a final decision, and there is no allegation or proof that the delay is due to any bad faith of Mr. Davis.

5. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Mr. Davis's claim in this action occurred in this judicial district. Mr. Davis resides in this judicial district. BNSF resides in this judicial district since it conducts business in the district and has sufficient contacts with the district for this Court to exercise personal jurisdiction.

## FACTUAL BASIS

6. Mr. Davis was injured on August 21, 2007, when he was attempting to board a railcar at the Rabanco plant near Whitney, WA. As he stepped up, the sill step detached from the car, causing Michael to fall and twist his knee. As a result of his injuries, Mr. Davis filed a claim under the FELA, 45 U.S.C. § 51 et. seq. This FELA claim was resolved on March 25, 2010.

7. Following two surgeries, Mr. Davis was able to return to work. Because of his injuries, Mr. Davis's treating medical doctors told him that his knee might flare up with pain, and that he might have to take time off on occasion. Specifically, Mr. Davis was to refrain from working when his knee became painful or would not allow him to work safely. Mr. Davis notified BNSF of this plan, and BNSF was aware of Mr. Davis's restrictions when they cleared him to return to work.

8. Pursuant to these restrictions, Mr. Davis intermittently laid off work for "sick leave" when his injured knee flared up. In the three-month period covering May, June, and July,

Complaint and Demand for Jury Trial
Page 2

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

2010, Mr. Davis laid off on sick leave intermittently according to his medical treatment plan of resting his knee when it gave him pain.

9. BNSF has in effect an attendance policy which exposes employees to discipline if they do not meet its stringent requirements. Specifically, if employees miss more than one (1) weekend day or two (2) weekdays in one month they are subject to discipline, including a range of sanctions including termination. This policy applies to individuals who lay off for "sick leave" or medical conditions qualifying for sick leave. The policy applies regardless of whether the sick leave was pre-approved. This discipline is discretionary.

10. BNSF also has in effect a "low hours" policy that acts as an attendance guideline that subjects employees at or below some undefined percentage of hours worked in a month to "special counseling", intimidation, and/or discipline which could include termination regardless of whether or not time lost was caused by an on-the-job injury or residuals therefrom. This discipline is discretionary.

11. At the time of the events described herein, BNSF placed injured employees into its Personal Performance Index Point Distribution Program, or "ERP Program". The ERP Program assigned points to employees for several reasons, including the reporting of work-related injuries and missing time for those injuries. BNSF employees in the ERP Program were subject to discipline under BNSF's Policy for Employee Performance Accountability, or PEPA Policy, if they accrue a certain number of points. Possible disciplinary measures included suspension, denial of benefits, and termination. Through the ERP and PEPA Programs, BNSF employees such as Mr. Davis were assigned points if the suffered a reportable or non-reportable on-the-job injury even if they were found not to have caused the accident or to have violated any rules.

Complaint and Demand for Jury Trial
Page 3

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

12. BNSF management-level employees are given bonuses through the ICP Bonus program based on factors including the number of on-the-job injuries suffered or days missed due to injury at their rail yard. This creates an incentive to minimize the number of injuries that are actually reported. Management employees can wield the discretion afforded them under the policies described above as a weapon to punish employees who report injuries and reward employees who do not.

13. On or about August 6, 2010, BNSF sent Mr. Davis a notice of investigation. The notice indicated that Mr. Davis was being investigated for a violation of the "BNSF Employee Attendance Guidelines. Specifically, [his] alleged absence from duty May, June, and July 2010."

14. BNSF held a formal investigation of Mr. Davis on August 23, 2010. Mr. Davis was unable to attend because he had reached his maximum hours of service under the Rail Safety Improvement Act of 2008 (RSIA).

15. BNSF issued a Formal Reprimand to Mr. Davis on or about September 7, 2010 for violation of the "BNSF Employee Attendance Guidelines." BNSF also issued two additional sanctions: a "One (1) Year Review Period" that commenced on September 7, 2010, and noting the alleged violation on Mr. Davis's PEPA and ERP profile. Both sanctions subjected Mr. Davis to further discipline of increased termination.

## LEGAL BASIS

16. As amended by the Implementing Recommendations of the 9/11 Commission Act, effective August 3, 2007, Section 20109 of the Federal Rail Safety Act, 49 U.S.C. § 20109, now provides that a railroad engaged in interstate commerce shall not take an

Complaint and Demand for Jury Trial
Page 4

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

adverse employment action against an employee for notifying the railroad that he suffered a work-related injury. 49 U.S.C. § 20109(a)(4).

17. As amended by the Implementing Recommendations of the 9/11 Commission Act, effective August 3, 2007, Section 20109 of the Federal Rail Safety Act, 49 U.S.C. § 20109, now provides that a railroad engaged in interstate commerce shall not take an adverse employment action against an employee for following orders or a treatment plan of a treating physician. 49 U.S.C. § 20109 (c)(2).

18. Mr. Davis engaged in a protected activity when he notified BNSF that he suffered an on-the-job injury on August 21, 2007. This protected activity was a contributing factor in BNSF's decision to force Mr. Davis to enter into its ERP and PEPA program. This program was unlawful because it was enacted to target, discipline, and harass employees who suffered and report on-the-job injuries. BNSF's conduct is in violation of 49 U.S.C. § 20109(a)(4).

19. Mr. Davis was engaged in a protected activity when he followed the orders and treatment plan of his treating physician. This protected activity was a contributing factor in BNSF's decision to hold a formal investigation of Mr. Davis on August 23, 2010 and to issue a Formal Reprimand, a One-Year Review Period, and to note the alleged violation on his PEPA/ERP Profile. BNSF's conduct is in violation of 49 U.S.C. § 20109(c)(2).

20. Mr. Davis respectfully asks for the damages allowed under 49 U.S.C. § 20109, including, but not limited to, the removal of the alleged violations from his employment record; removal of all disciplinary actions taken against Mr. Davis for engaging in protected activity; system-wide revision of BNSF's Employee Attendance Guidelines and low hours policies to make them compliant with 49 U.S.C. § 20109; compensatory damages;

Complaint and Demand for Jury Trial
Page 5

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

compensation for litigation costs; expert witness fees; reasonable attorney fees; and punitive damages.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Dated: October 28, 2014

*[signature: Bradley K. Crosta]*

Bradley K. Crosta.
CROSTA & BATEMAN, LLP
999 3rd Avenue, Suite 2525
Seattle, WA 98104-4032
Telephone: (206) 224-0900
Facsimile: (206) 467-8028
bcrosta@crostabateman.com

-and-

William G. Jungbauer, *application for pro hac vice admission anticipated*
YAEGER & JUNGBAUER BARRISTERS, PLC
2550 University Ave, Suite 345N
St. Paul, MN 55114
Telephone: (651) 288-9500
wjungbauer@yjblaw.com
**ATTORNEYS FOR PLAINTIFF**

Complaint and Demand for Jury Trial
Page 6

Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500